We'll hear the last case to be argued, United States v. Scali. United States v. Scali. Shall I proceed, Judge Chin? This is Walter Laughlin for Joseph Scali. You may proceed. You've reserved one minute for rebuttal. I have. Okay. May it please the court, my name is Walter Laughlin. This is... If you speak a little louder, I'm not hearing you as well as the others. Oh, I'm sorry, Judge Calabreta, is this better? Yes. Okay. This is a 10-count prosecution, and so, and I have a claimant misjoined her, so I think I may have to jump around a little bit. Four of the 10 counts are related to tax, covering the tax years 2006 to 2013, specifically the indictment charged tax evasion for 2011 and 12, false statements to the IRS about tax evasion between 2006 and 2013. Not content to prove those tax counts with evidence related to those tax years, the government sought to introduce evidence related to 12 other federal tax years, back to 1994, and nine New York state tax years, 2005 to 2013, even though there were no state tax charges in the indictment at all. Over defense objection, the court scaled the government's excessive request back, but still permitted the government to introduce evidence related to 18 tax years of uncharged conduct, nine years of uncharged federal tax years, and nine years of uncharged New York state tax years, and predictably, the government then made a propensity argument to the jury on these tax counts. Arguing to the jury, Galley's tax misconduct was pervasive, chronic, and went on for decades. Of course, the government was referring to the Similar Act evidence, because the indictment did not charge decades of tax misconduct. This wholesale misuse of Similar Act evidence, arguing for an inference that Rule 404 prohibits, also ignored the protocol set out by this court in Judge Newman's opinion in Figueroa, which is that the government should wait until the conclusion of the defense case before offering Similar Act evidence, enabling the district judge then to be in the best position to weigh the prohibitive worth of the evidence against its prejudicial effect. But didn't your client put intent in discussion before that decision was made? No, maybe not as to all of them, but the basic question about admitting those other things had to do with intent. And it seemed to me, when I looked at the record, that you had already questioned intent. Well, not me personally, Your Honor, I didn't try the case, but I know the government has referred to, I think, two sentences of the opening statement of the trial counsel, where he referred to the state of mind of the defendant. But isn't that enough to say, I'm going to put that into dispute, and so that the court can then say what is relevant to that can be admitted? Well, Your Honor, the argument, well, first of all, I think, in fairness, one of the state of mind references that the government points to is really about materiality on some of the false statement charges. But for the government to argue that it can introduce 18 years of uncharged tax evidence in order to say, and this is what the government said, we need to show that this lawyer sometimes filed a tax return. And therefore, he has the knowledge that he's required to file tax returns in the years that he didn't. Counsel, I have a question and another point, and if I may, and it goes to the structuring. I am, no, I don't like to say that there's a pattern. Our cases say pattern is rather hard to do. The context here might make it seem that it is so because your client didn't want to call attention to the escrow cases, to the escrow account. But I noticed that there was a major transfer into the escrow account, which would have been, which is larger than $10,000 by that. Did that transfer in itself call attention to the escrow account? Or are there some reasons for many exceptions as to what it calls attention? So I wondered, the record wasn't, we weren't able to get some parts of a record. And I wondered if you have anything to say about that. Well, I think the evidence is, Your Honor, that the four bank deposits went into the escrow account. And within 24 hours, something in the neighborhood of $50,000 from the escrow account was transferred into the office operating account, which was always, you know, contrary to the governor's theory, which was that the deposits went into the escrow account in order to conceal them or to... Well, that's what I'm asking. Would that deposit have been something that called attention or not? Because not every type of deposit does. Well, I think in the structuring count, Your Honor, the issue is the deposits at the bank. And the allegation is that if you break up deposits so that they are slightly less than $10,000, the threshold for triggering a CTR, that you're guilty of structuring. Here in particular, what I would say is that I have never seen, and I don't think the government has ever cited, a case that involves so few deposits, including two deposits that are thousands of dollars less than the threshold. One was, I think, for $5,700, and one was for $8,000. So that is not a proper circumstantial basis for a jury to conclude that there was an intent to stay under the CTR triggering amount for at least half of the deposits. Can you point to any evidence in the record that suggests a possible innocent explanation for the deposits that constitute the basis for the structuring charge? Because like Judge Calabresi, I was struck by their numerosity and their size and where the deposits were made and so on. Well, the numerosity is very low compared to every other structuring case that I've ever seen. But there was no evidence as far as I know. The government proceeded on the theory that if you can prove that several deposits were made over a couple days, then the jury can infer based on the number of deposits and the amounts that there was an attempt to keep a CTR from being triggered. But I don't think that that is a rational inference when you have a deposit of $5,700 or a deposit of $8,000. It would make much more likely. The government's theory was that— Weren't some of them just done on the same day in different locations? I think two or three were made on one day and one was made on the next day. And I think two of them were at the same branch near Mr. Scali's office. I think at least one was in Manhattan. You have one minute. Oh, dear. There was evidence by a former client of Mr. Scali's that they met at a bank or at her house and she paid in cash, which is at least some explanation for perhaps making cash deposits. I don't know how I'll do in the—where I was when I was talking about the tax counts. I think I may have to skip the tax counts and go to— I'll probably do count one because that is the— This is our usual practice, 10 minutes in a case like this. I understand. I understand. And of course, I've been letting people go over a bit as well. But why don't you finish up and you have some time for rebuttal. Okay. Let me do count one. One of the indictments. The government alleged that from the very beginning of a nearly two-year period, Mr. Scali devised a scheme to defraud the prospective buyer of property owned by a client of his and did defraud that buyer of $850,000. What the government has never reconciled itself to is that the sale of the property was governed by a written contract, as the statute of frauds requires. And it is the contract that defined the rights of the parties to the transaction, including, most importantly, a provision that allowed the seller to retain the buyer's deposited money as liquidated damages in the event of a breach by the buyer. And it is undisputed that the buyer breached by blowing up two contractually required closing dates. It's also undisputed that Scali returned to the— Did that give Mr. Scali the— somehow give him the ability to make use of the funds himself, personally? I'm not sure what the point is of that. Well, the contract right, you know, was his client's. And neither the government nor the defense called his client to determine whether and at what point the client exercised that right or what the understanding was between him and Scali with respect to the money. Although, you know, his client received a portion of the money, as did the real estate broker, Mr. Byrd. All right. You have some time for rebuttal. We'll hear from the government. Okay. Good afternoon, Your Honors. May it please the court. My name is Olga Berevich, and I represent the United States on this appeal, as I did in the district court below. For the reasons set forth in the government's brief, the judgment below should be affirmed. In the interest of time, I will limit myself to the issues that counsel raised, unless the court has additional questions. With respect to count two, the evidence was amply sufficient to support the jury's guilty verdict as to the structuring. There are three elements that the government was required to prove for that count, that the defendants knew of the CTR requirement at the time of the transaction, that he actually engaged in acts of structuring, and that he did so with the intent to evade the reporting requirement. With respect to the first element, the evidence was incontrovertible that Mr. Scali knew of the reporting requirement. There was an email introduced at trial, it's at Appendix 5A3, in which Mr. Scali wrote in May of 2012, that all transactions of $10,000 or over are reported by the banks to our Internal Revenue Service. The second element is also not in dispute. Mr. Scali, in fact, deposited $32,400 through a burst of four separate cash deposits into his escrow account, each under $10,000, which caused the bank not to file a CTR. The only element... Counsel, counsel, why would he do that if there was also a major deposit which would cause attention to the escrow account just as much as these? This is the thing that troubles me. Is there enough to show a pattern which we've been very hesitant to do? We don't mind if there are evil reasons where it's suggested what he's doing, but I'm having a little trouble understanding it if, in fact, there was this major amount, which would be, of course, known and recorded. Your Honor, there was no evidence at trial that there were any transactions in the escrow account that in fact generated a CTR. I believe Your Honor is referring to the fact that following the structured transactions, Mr. Scali transferred approximately $56,000 into his operating account. However, all that was was an interbank transfer. Mr. Scali had his accounts for the escrow and operating in the same bank, but he simply went to the bank and made that transfer. There is no evidence, and the government does not believe that that ever generated or would have generated a CTR. And with respect to the second part of your question, there was ample evidence at trial as to why Mr. Scali wanted to conceal his escrow records, his escrow account. First, that was the same account into which he received the $850,000 that he described as a fraud appeal. I have no problem knowing why he didn't want attention paid to it. My question went to the first part as to whether attention was paid anyway, and you've given me an answer on that. Thank you. Thank you. Have you completed your answer to Judge Calabresi? I have. And I'd like to just ask a kind of general question here. I was struck by a couple of things that the appellant's counsel pointed out, including that the jury took 11 minutes to return its verdict on 10 different counts, and that the indictment covered a wide range of actions, including lying to the grievance committee of the court, as well as the structuring that we've just been discussing, as well as mail fraud related to the escrow and so on. I noticed what seemed to be a kind of overcharging potentially. Count three, making false statements, and count five, obstructing and impeding the administration of the tax laws on the same conduct. And similarly, in count eight, obstruction of justice, and nine, perjury based on the same conduct. The introduction of the state tax returns, as well as federal tax returns, I didn't see any sign that state tax evasion was at issue. And even acknowledging, as Judge Calabresi pointed out, that intent was put at issue early on. This seemed to me a kind of scattershot approach that couldn't help but affect the jury, as it seems to me the 11-minute verdict did, to show that Mr. Scali, by virtue of any number of actions over the course of more than a decade, was just a, you know, had a propensity to misrepresent and defraud. How can you reassure me that the jury wasn't unduly influenced here? I mean, I gathered that limiting instructions were made, but the fact that limiting instructions were made, I think counsel counted them as over 16 times, suggests to me that it draws attention more to this pattern, rather than proving the individual crimes in a kind of focused way. Can you give me any, you know, facts from the record, or just reassure me about my concerns in some way? Several responses, Your Honor. First, I think the fact that the jury deliberated only for approximately 11 minutes, I think just reflects the fact that there was overwhelming evidence introduced at trial, that Mr. Scali, in fact, committed each of the 10 crimes with which he was charged. The indictment did charge 10 different crimes, as Your Honor pointed out, but for the reasons, of course, in the government's brief, and that I'm happy to address, all of those counts were properly joined under Rule 8A. With respect to Mr. Scali's arguments relating to 404B, the only evidence that the government introduced at trial, that wasn't direct evidence of the charged offenses, related to the state and federal tax history. And there, that evidence was introduced for a very limited purpose, which was to show that Scali was acting with criminal intent and willfulness. Why was it necessary to introduce the state tax returns, as well as a decade of federal tax returns? Was state tax evasion ever at issue? No, Your Honor, the state tax evasion wasn't directly charged. However, under the court's inclusionary approach to Rule 404B, particularly in tax cases where it's a heightened mens rea requirement, this court routinely held that the state tax history is admissible when a defendant puts his criminal intent and willfulness at issue. And he did here, both in pretrial motions and also in his opening statement. The purpose, to answer your question, of the state history was to show that when Mr. Scali was lying to Officer Dwyer in 2013, he was doing that intentionally. And he wasn't just a counsel to justice to the jury in his opening statement, acting because of mistake or that he forgot to file. The state history shows that Mr. Scali's conduct with respect to state taxes was similar and parallel to what he did federally. But importantly, in 2011, he was questioned by the New York State Tax Department and he was asked, did you file your 2006 tax return? Mr. Scali answered falsely. He said, no. At that point, oh, he said, yes, I'm sorry. At that point, the New York State Authority told him, we don't have that on file. Did you file for 2007? And he admitted that he hadn't. And that evidence was powerful proof that when two years later, he was telling Officer Dwyer that he filed for both 2006 and 2007, he was intentionally making a misrepresentation and he wasn't making a mistake. What about the obstruction of justice and perjury charges based on the submission of a false affidavit to the grievance committee? That seems to me of a different nature, a different kind of proceeding than all the tax-related and business-related charges that he was subject to. But wasn't that just piling on here? Couldn't that have been handled separately? I mean, if we decide against you on Joinder, we need to show harmless error. But because of this long list to become somewhat more attenuated, I worry that it may not have been harmless error. You have one minute. So a quick response on that. So first, Mr. Scali waived any claim of improper Joinder after counts 8 through 10. These charges were in the first superseding incitement back in 2016. You have two opportunities. Well, OK. Excuse me, counsel. But there was a claim of improper Joinder with respect to the evidence of his fraudulency claiming that he was acting as a lawyer to get $1,200 from a client. And that has very little to do with the rest of the things, too. That is, the government was putting in everything, including the kitchen sink, in one show, wasn't it? Your Honor, respectfully, Mr. Scali only moved to sever counts 2 through 7 in the district court. So he implicitly conceded two times in two sets of pretrial motions that counts 1, 8, 9, and 10 were properly joined. And to answer your question about 8 and 9, those counts were part of a common scheme and plan and properly joined with count 1. Because what Mr. Scali did was he tried to conceal the Sakaki fraud in the grievance committee by claiming that it had nothing to do with his law practice. And that led to his suspension. And then when he was before the SDNY grievance committee, he did the same thing. He filed an affidavit claiming his suspension was for non-cooperation in an investigation that had nothing to do with his law practice. So for that reason, we would submit the counts 1, 8, and 9, even if the court were to reach that issue on the merits, even those ways were properly joined. All right. Thank you very much. We'll hear the rebuttal. Thank you. I would just say on this joinder issue, which I can mostly rest on the brief, but just one or two. The government's rationale is that these 10 counts are based on the same after transaction. That's the language from Rule 8. And that's how the government has tried to defend it on the appeal. And of course, that's entirely different from this court case in Shella, where it found that money laundering and conspiracy charges were unrelated to tax offenses. If I could just add one additional thought on count 1. In 2014, the buyer brought an action in the state Supreme Court to litigate the issue of whether he was entitled to the return of his money. This litigation involving contracts, claims, and defenses would have resolved these issues years ago in the form chosen by the plaintiff buyer himself. But this opportunity was lost when a member of the U.S. Attorney's Office went out to Nassau County, moved to intervene in the case, and asked the court to say the matter before her indefinitely in favor of a criminal case. The government first obtained an indictment quite a bit later in July 2016, followed by two superseders. I think that second superseder was simply to add that count 10 mail fraud, completely unrelated to anything else in the case, as well as Judge Carney was saying with respect to the single sentence in that very long affidavit, which was alleged to be both perjury and obstruction of justice. I think probably my time is about to expire. And so I think your time expired a while ago, but go ahead. You can finish up. No, I would simply say, unless the court has any further questions, I'll rest on my brief with respect to the other issues. All right. Well, thank you. The court will reserve decision. The last two cases are on submission. We have some additional motions which are on submission. Accordingly, I'll ask the deputy to adjourn.